# Exhibit 9

## to Defendant's Motion for Summary Judgment [Doc. 51]

## [Filed as Public/Unrestricted]

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**FLSA2007-2**

January 25, 2007

Dear **Name\*:**

This is in response to your request for an opinion concerning whether sales employees employed by members of your trade association qualify for the outside sales exemption under section 13(a)(1) of the Fair Labor Standards Act (FLSA).[1]  Based on a review of the information you provided, it is our opinion that the sales employees discussed below are exempt as outside sales employees.

You state that the sales employee's primary duty is to sell newly-constructed homes.  Sales employees usually work out of temporary sales facilities, such as model homes or trailers, that are located in or near the community where the builder is selling homes.  The model home or trailer is open only during the time the builder is selling homes in the community and usually contains a temporary sales office that serves as a place to meet potential home buyers.  Typically, the garage in the model home is transformed into a temporary sales office and has a desk, a telephone, and a fax machine, but few of the other accoutrements of a typical business office.  The builder usually maintains a separate, permanent office location from which other day-to-day operations are conducted, and to which the sales employees report.  Once the sales activity in the new home community is complete, the temporary sales office in a model home is restored to a garage, and the model home is returned to a residence and sold.

Sales employees generally leave the model home or trailer for one or two hours a day, one or two times a week, to engage in selling or sales-related activities.  These activities include meeting with prospects, real estate sales employees,[2] or others involved in the home buying process; showing properties and communities to prospects; touring and demonstrating model homes and home sites; engaging in a wide variety of marketing efforts; and meeting with customers, real estate sales employees, construction personnel, and others to ensure customer satisfaction throughout the sale and construction of the new home.  An indispensable component of the sales employee's sales effort is to take the customer out to the various home-sites within the community.  The sales employee helps the customer understand where a house will be built, where the property lines begin and end, and where the neighboring houses to be built will be situated.  In many cases, it will be crucial for customers to understand whether they will be surrounded by other houses or vacant land, how close to road-noise the house will be, and where the location of any land-use restrictions (such as a septic tank) will be on that specific parcel of land.  The sales employee also may take customers to view homes under construction or recently-completed homes.

---

[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.

[2] This letter has been edited to reflect the substitution of the term "real estate sales employees" in place of "realtors".

LGI HOMES 01026

The remainder of the sales employee's week is typically spent with customers inside the temporary sales office in the model home or trailer performing activities in support of the sales employee's sales efforts, such as completing paperwork; prospecting customers; creating customer contact cards and promotional materials; following up with customers; scheduling appointments; calling real estate sales employees to generate interest in the homes, including occasionally visiting real estate sales employee offices for this purpose; learning about the homes; and other similar sales-related tasks. Most, if not all, of a sales employee's time is spent on sales or these sales-related activities. Sales employees spend at most one or two hours a week performing work that is not otherwise incidental to and in conjunction with their own sales or solicitations.

FLSA section 13(a)(1), 29 U.S.C. § 213(a)(1), provides an exemption from the minimum wage and overtime provisions for "any employee employed . . . in the capacity of outside salesman." The Department has issued regulations, contained in 29 C.F.R. Part 541, that set forth the requirements for this exemption. These regulations were revised effective August 23, 2004 (69 Fed. Reg. 22,122 (Apr. 23, 2004)).

Under 29 C.F.R. § 541.500(a), "[t]he term 'employee employed in the capacity of outside salesman' in section 13(a)(1) of the Act" means "any employee":

(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

As described in 29 C.F.R. § 541.700(a),

an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

As for determining the primary duty for the outside sales exemption, the regulations state that the

work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500(b).

To qualify for the outside sales exemption,

> [a]n outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property.

29 C.F.R. § 541.502.

The Wage and Hour Division has long recognized that

> [r]eal estate salesmen stationed in a model home on a tract from which parcels of real property are being sold with or without improvements, leaving the model home for such purposes, customarily and regularly, would meet the requirement of the definition, so far as making sales "away from" the employer's place of business is concerned. This is true even though all of the property shown to prospects by the salesmen is within the tract on which the model home is located.

Field Operations Handbook (FOH) § 22e06(c). In short, "[s]o long as a salesman customarily and regularly goes to the site of the property or to prospects as a part of making his sales, this requirement for 'outside' sales work would be met." *Id.* "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701. However, "[n]othing in [29 C.F.R. § 541.701] requires that, to meet the definition of 'customarily and regularly,' a task be performed more than once a week or that a task be performed each and every workweek." 69 Fed. Reg. at 22,187.

Please note that under 29 C.F.R. § 541.500(c), "[t]he requirements of Subpart G (salary requirements) of this part do not apply to the outside sales employees."

After reviewing the information provided, we believe that the sales employees in this case qualify for the outside sales exemption under section 13(a)(1) of the FLSA. First, the sales employees meet the requirement that the primary duty must be making sales within the meaning of section 3(k) of the FLSA because the sales employee's primary duty is to sell newly-constructed homes. "Real estate salesmen will generally meet this test, since 'sales' under Sec. 3(k) of the Act include contracts to sell." FOH § 22e06(a). As you state, most, if not all, of a sales employee's time is spent on sales or sales-related activities. Sales employees spend at most one or two hours a week performing non-exempt work. Other duties of the sales employees such as meeting with prospects, real estate sales employees, or others involved in the home buying process; showing properties and communities to prospects; touring and

demonstrating model homes and home sites; and meeting with customers, real estate sales employees, construction personnel, and others to ensure customer satisfaction throughout the sale and construction of the new home, are examples of work performed incidental to and in conjunction with the sales employee's own outside sales or solicitations.  In addition, such tasks as completing sales-related paperwork, prospecting customers, engaging in a wide variety of marketing efforts including creating customer contact cards and promotional materials, following up with customers, scheduling appointments, calling real estate sales employees to generate interest in the homes, and learning about the homes are also considered the type of duties that further the employee's sales efforts and, therefore, are regarded as exempt work. *See* 29 C.F.R. §§ 541.500(b), -.503; Wage and Hour Opinion Letters December 21, 1967 and April 21, 1964 (copies enclosed); FOH § 22e06(e).

Second, the sales employees meet the requirement that they be customarily and regularly engaged away from the employer's place or places of business in performing their primary duty of selling newly-constructed homes.  As you describe, sales employees generally leave the model home or trailer one or two hours a day, one or two times a week, to engage in the selling or sales-related activities described above.  As you further note, "an indispensable component" of the sales employee's sales effort is to take the customer out to the various home-sites within the community so that the sales employee is able to help the customer understand where a house will be built, where the property lines begin and end, and where the neighboring houses to be built will be situated.  In addition, the sales employee also may take customers to view homes under construction or recently-completed.  All these types of activities are certainly critical, or as you state "indispensable components" of the overall sales effort, and would almost always have to occur away from the model home.  Accordingly, the described activities qualify as being "customarily and regularly engaged away from the employer's place . . . of business."[3]  Therefore, the sales employees in question are exempt outside salespersons.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented.  Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein.  You have represented that this opinion is not sought by a party to pending private litigation concerning the issues addressed herein.  You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

---

[3] It is the nature of the time spent outside the model home, rather than the amount of time, that drives our conclusion.  Virtually all of the indispensable components of the sales effort are concentrated in the outside period.

We trust that this letter is responsive to your inquiry.

Sincerely,


Paul DeCamp
Administrator

**\*Note:**  The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7).

Date:  August 2016

Memo:  To the files

From:  M Britton, C Sonier

RE:  Classification of New Home Consultants as Exempt under the "Outside Salespeople" Classification

The memo summarizes the evaluation performed to confirm that our New Home Consultants are properly categorized for purposes of applying the Fair Labor Standards Act ("FLSA"). The FSLA requires the payment of minimum wage and overtime pay.  FSLA does not apply to "outside salespeople".

Colleen Flynn, an attorney with Johnson, Pope, Bokor, Ruppel & Burns in Clearwater, Florida, assisted us with a response to a former employee related to this topic.  This inquiry resulted in our further analysis of our position on this matter.  Resources identified by C. Flynn included the following:

- Exhibit 1:  Opinion Letter FLSA2007-2
- Exhibit 2:  Westlaw cases:
    - Meritage - 2/13/2014
    - NVR – 2/23/2009
    - Brayson Homes – 7/20/2007
- Exhibit 3:  DOL:  Field Operations Handbook extract
    - Opinion Letter FSLA 2007-01 and 2007 – 02

Based on these resources, we considered LGI Homes, Inc.'s ("LGI") employment and operating practices related to our New Home Consultants.  Below is a summary of the matters considered.

1. Criteria for Outside Sales Classification
    a. To qualify for the outside sales employee exemption, all of the following tests must be met:
        i. The employee's primary duty must be making sales (as defined in the FLSA), or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
        ii. The employee must be customarily and regularly engaged away from the employer's place or places of business.
    Based on the Meritage case, we believe that LGI's NHC meet the criteria.
    - Primary duties – making sales.  LGI's NHC have defined responsibilities in their offer letter and PBJD.  The sale of homes is their primary focus. They have set quotas that they must deliver.  They are paid a draw, commission and bonuses based on home closing volume/value.  Their responsibilities and duties are clearly defined in the Sales Training Manual which directs them to limit distractions and stay focused on Sales and Closings. The responsibility of the sales manager, office manager, and the marketing

**CONFIDENTIAL**                                                                                                                               **LGI HOMES 01031**

staff is to perform other related support activities for home sales to enable the NHC consultant to maintain their focus.  This is a very well-defined sales approach that has enable LGI to be an industry leader in absorption. The NHC position requires the NHC to be at the sales office on Saturday and Sundays to conduct sales, and weekday hours to develop leads and set appointment for the weekend days.  There are minimum coverage requirements to support the sales activity but there is no mechanism to track hours worked.  But, NHC that invest more hours may have higher compensation from higher deal flow and closings.

- Homes sales are conducted through the LGI methodology which is structured and scripted.  The Sales Training Manual defines how initial communications with customers should be conducted to set meetings for the weekend days.  Appointments with customers are only scheduled for Saturdays and Sundays. The appointments are managed in accordance with the LGI presentation protocol which requires the NHC to provide an initial "front-end" presentation to introduce the customer to LGI, the community, our principals and core values, and to understand their primary buying motivation.  This generally takes approximately one-hour.  The interest level of the customer is then assessed and they are asked if they would like to complete a prequalification worksheet to determine their financial ability to purchase.  Then, the NHC takes the customer to see the community (in the NHC's vehicle) and they tour the target model home(s).   This portion of the appointment can take from 1 to 4 hours, due to the level of detail discussed and during this time the NHC asks the customer if they will purchase. The price and payment are presented to the customer in the target home(s) and all negations are conducted in those homes.

On a given weekend, a NHC may have from 4 to 15 appointments, including walk-ins.  Therefore, they likely spend at least 4 hours per weekend touring homes and could spend substantially more.  The time spent would be highly correlated to the number of sales contracts.

The LGI PTS system tracks customer calls, appointments set, appointments conducted, tours, sales contracts signed, as well as many more details.  Since NHC are evaluated based on sales, these metrics are used to coach them on their performance.  Therefore, LGI management is very aware of NHCs, if any, who are not regularly touring customers.

During the weekdays, NHCs must stay informed of our product inventory, the community and the competition. They will routinely be in the community, outside of the sales office, for this reason.

**ATTORNEY-CLIENT PRIVILEGED MEMORANDUM**
**TO: SCOTT GARBER**
**FROM: THERESA GALLION**
**FEBRUARY 18, 2019**

I.   Introduction

At all relevant times, LGI Homes has employed new home consultants in its communities. Many of these individuals are licensed real estate agents consistent with state regulations where they work and must possess a valid and active real estate license. Their performance-based job description states their general duties and responsibilities include reporting to work daily with a notation working on Saturday and Sunday is required. Further, they take incoming calls and schedule appointments with potential customers for follow-up meetings. Among other things, they turn in regular reports; perform office duties; attend regular meetings; and liaise with potential customers until closing. During the week, it is expected consultants will take incoming phone calls, web-based leads, and walk-in opportunities. They tour properties with prospects, write sales contracts; maintain contact with the customer; and are responsive to the customer's needs through closing.

The critical duties of new home consultants are to sell and close 20 homes per year utilizing the LGI way; participate in various scheduled training activities weekly, monthly, or quarterly; and perform "keep in touch" calls to enhance business opportunities. The performance-based job descriptions anticipate these individuals are on LGI property regularly throughout the workweek and as needed by customers.

The purpose of this Memorandum is to summarize the regulations and law under the federal Fair Labor Standards Act (FLSA) with respect to the outside sales exemption for new home consultants; to provide an opinion that such consultants are most likely exempt from the

overtime pay provisions of the FLSA when employed pursuant to the LGI Way; and to buttress the conclusions reached in August 2016 in connection with an opinion sought by Meg Britton, LGI's former Chief Administrative Officer, which also concluded new home consultants fell under the outside sales exemption. Specifically, and as per the discussion below, the weight of authority suggests LGI's new home consultants meet each part of the test for outside sales exemption under the federal Fair Labor Standards Act.

## II. Applicable Law: Summary of FLSA Provisions

The FLSA exempts from its minimum wage and timekeeping requirements individuals employed "in the capacity of outsides salesman". 29 U.S.C. § 213(a)(1). The U.S. Department of Labor ("USDOL") has defined the outside-sales employee exemption to include any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act, or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 U.S.C § 541.500(a)[1]

### Discussion of Primary Duty

There is no question LGI's sales consultants in question engage in sales as a primary duty. *See* 29 C.F.R. § 541.501(b)(sales includes "the transfer of title to tangible property"). This is not

---

[1] To the extent that the status of the 2016 revised white-collar exemptions is unknown, those revisions do not relate to the outside-sales exemption.

to say the FLSA requires sales employees to spend the workweek directly engaged in sales at all times. *See* 29 C.F.R. § 541.502 (outside sales includes "sales made by mail, telephone or the Internet" if "such contact is used merely as an adjunct to personal calls"); *see also* 29 C.F.R. § 541.503(a). The focus of the "primary duty" test is to determine the "principal, main, major or most important duty." *See* 29 C.F.R. § 541.700 (defining primary duty and identifying factors including "the relative importance of the exempt duties as compared with other types of duties"); *see also Billingslea v. Brayson Homes, Inc.*, 2007 WL 2118990, *4 (N.D. Ga., Atl. Div., July 19, 2007).

Indeed, over a decade ago the USDOL dispensed with the "long test" version of the exemption that required a quantitative analysis of an employee's exempt versus nonexempt work. *See generally*, *Final Rule, Part 541 – Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Computer and Outside Sales Employees*, 69 Fed. Reg. 22260 (Apr. 23, 2004) (eliminating "long test" restricting nonexempt work, while continuing to characterize work incidental to sales as exempt).

When an employee's primary duty is sales, the employee is properly classified as an "outside sales employee" exempt from the FLSA overtime requirement, even if the employee performs that primary duty away from a fixed site and performs that duty (including any promotional work *incidental* to employee's outside sales or solicitations), on a "greater than occasional" basis. *Wong v. HSBC Mortg. Corp. (USA)*, 749 F. Supp. 2d 1009 (N.D. Cal. 2010) (emphasis added).

**Significance of Fixed Site and Engaged Away From the Employer's Business**

3

The FLSA does not so restrict "away from the employer's place of business" to only apply to customers' homes or businesses. *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 93–94 (E.D.N.Y. 2015) Indeed, the regulation itself refers to other locations where "outside sales" can occur, *i.e.,* hotel rooms and trade shows. 29 C.F.R. § 541.502. That the regulation cites these additional examples of locations where "outside sales" may occur shows that the regulation is not limited to sales made at a customer's home or place of business or that it excludes sales activity that occurs at locations not explicitly enumerated in the provision. *Id*.

The few district courts that have interpreted this regulation agree. *See, e.g., Wolfram v. PHH Corp.,* 12–CV–599, 2014 WL 2737990, at *5 (S.D.Ohio June 17, 2014) ("a salesperson is exempt if she performs her sales work away from a fixed site (used by the salesperson as a headquarters or for the telephonic solicitation of sales) on a greater than occasional basis."); *Hantz v. Prospect Mortgage, LLC,* 11 F.Supp.3d 612, 620 (E.D.Va.2014) ("Where some of those component activities take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an outside sales employee if the activities occurring outside of the office are critical to the sales process and occur on a consistent basis.") (*citing Wong v. HSBC Mortg. Corp.,* 749 F.Supp.2d 1009, 1013 (N.D.Cal.2010)); *Tracy v. NVR, Inc.,* 599 F.Supp.2d 359, 363 (W.D.N.Y.2009) (rejecting a similar argument on 29 C.F.R. § 541.502). *See* also *Hall v. Haworth, Inc.,* No. CV H-12-1776, 2014 WL 12537074, at *4 (S.D. Tex. Apr. 3, 2014), report and recommendation adopted, No. 4:12-CV-1776, 2014 WL 12539249 (S.D. Tex. May 2, 2014); *Dixon v. Prospect Mortg., LLC*, 2014 WL 130942, at *5 (E.D. Va. Jan. 14, 2014) ("[t]he regulations simply do not limit application of the outside sales exemption to those employees that consummate sales at a client's home or place of business"). Indeed, courts have held that qualifying business can be conducted "at the gym, restaurants, sporting events, community events, [and] car

4

dealerships"; at "seminars and trade shows"; at the theater; in coffee shops; at "bridal shows, baby shows, and street fairs"; and generally anywhere "away from a fixed site." *See, e.g.*, *Dixon*, 2014 WL 130942, at *4; *Cougill v. Prospect Mortg., LLC*, 2014 WL 130940, at *3 (E.D. Va. Jan. 14, 2014); *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669, at *4 (S.D. Cal. 2012); *Lane v. Humana Marketpoint, Inc.*, 2011 WL 2181736, at *2–4 (D. Idaho 2011); *Chenensky v. New York Life Ins. Co.*, 2009 WL 4975237, at *2, 6 (S.D.N.Y. 2009); *Palmieri v. Nynex Long Distance Co.*, 2005 WL 767170, at *4 (D. Me.), *adopted* 2005 WL 1058921 (D. Me. 2005).

**Customarily and Regularly**

> The regulations define the phrase "customarily and regularly" to mean
>
> [A] frequency that must be greater than occasional but which, of course, may be less than constant. Takes or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

29 C.F.R. § 541.701.

When the USDOL last updated these regulations and implemented this language, it contemporaneously stated that:

> Nothing in this section requires that, to meet the definition of "customarily and regularly," a task be performed more than once a week or that a task be performed each and every workweek.

*Preamble to Final Rule, Part 541*, 69 Fed. Reg. at 22187.

5

The phrase "customarily and regularly" is not a majority of the time test. *See, e.g., Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 620 (E.D. Va. 2014); *Lint v. Nw. Mut. Life Ins. Co.,* No. 09CV1373, 2010 WL 4809604, at *3 (S.D.Cal. Nov. 19, 2010) (finding that spending ten to twenty percent of the time outside of the office engaged in sales activity is sufficient); *Taylor v. Waddell & Reed, Inc.,* No. 09cv2909, 2012 WL 10669, at *3 (S.D.Cal. Jan. 3, 2012) ("[S]elling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption." (citation omitted)).  The regulations simply do not limit application of the outside sales exemption to those employees that consummate sales at a client's home or place of business. See *Tracy v. NVR, Inc.*, 599 F.Supp.2d 359, 363–64 (W.D.N.Y.2009)

Where some of those component activities take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an "outside sales employee" if the activities occurring "outside of the office are critical to the sales process" and occur on a customary and regular basis. *See Dep't of Labor, Wage and Hour Div.*, Opinion 2007–1, 2007 WL 506574 (stating that where sales associates engaged in selling homes initially meet prospective buyers and "preview the nature, location, and pricing of the units" in employer's "sales offices," and "close sales by having buyers return to the [employer's] sales office in order to complete a contract of sale," sales associates nonetheless are properly classified as "outside sales persons" where they customarily and regularly engage in activities "critical to the sales process" while outside of the office, in particular, "leaving the sales office to show properties" to prospective buyers); *see, e.g., Tracy v. NVR, Inc.,* 599 F.Supp.2d 359, 360, 364 (W.D.N.Y.2009).

Certainly an LGI new home consultant's "outside" work is not the "isolated or one time tasks" that the regulation deems insufficient to support the exemption to the extent frequency has relevance. *See* 29 C.F.R. § 541.701.  Moreover, the <u>nature</u> of the time spent "outside" is relevant.

CONFIDENTIAL                                                                                                           LGI HOMES 01038

*See USDOL Opinion Letter, FLSA 2007-2* (Jan. 25, 2007)(concluding that requirement was met where "sales employees generally [left] the model home or trailer one or two hours a day, one or two times a week, to engage in the selling or sales-related activities"). LGI's new home consultants' work activities are also similar to the plaintiffs in *Billingslea v. Brayson Homes, Inc.*, No. 1:04-CV-00962-JEC, 2007 WL 2118990, at *2 (N.D. Ga. July 20, 2007)(Holding plaintiffs who worked for defendant as real estate salespeople were properly classified as "outside sales employees."); See also *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *9 (S.D. Tex. Feb. 13, 2014)("Time spent viewing home lots is "outside" time.").

**2007 DOL Opinion Letters**

On January 25, 2007, the Department of Labor ("DOL") issued two opinion letters regarding whether the outside sales exemption applies to real estate sales agents who sell homes in a residential community built and developed by the employer as part of a common land plan. *See DOL Wage & Hour Op. Ltrs.*, FLSA2007–1, FLSA2007–2 (Jan. 25, 2007). The sales agents at issue in the opinion letters worked from sales offices, typically in a model home or trailer, located in the residential community, and would leave the sales office to conduct tours with buyers. The DOL concluded that these agents qualified for the outside sales exemption because their primary duty was making sales away from the employer's place or places of business, and "lots for sale are not part of the employer's place of business but rather are the products to be sold by the sales associates." *DOL Wage & Hour Op. Ltr., FLSA2007–1*, at 4. Thus, "leaving the sales office to show properties, even properties located within the same subdivision, satisfies the requirement that the sales associates be engaged away from their employer's place of business." *Id*. at 5.3 "We must give deference to the DOL's interpretation of its own regulations through, for example,

opinion letters" to the extent that the opinion letters have the power to persuade. *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir.2007)

As the Department of Labor has noted, there is no suggestion in the regulations that work performed "customarily or regularly" must occupy a given percentage of an employee's weekly working hours. *See* Opinion Letter from Dept. of Labor, Wage and Hour Division (Jan. 25, 2007), 2007 WL 506575. Indeed, courts have found that even minimal consistent outside activities can satisfy the outside sales exemption. See, e.g. *Lint v. Nw. Mut. Life Ins. Co.*, No. 09CV1373, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (finding that a salesperson who spent approximately 10-20 percent of his time meeting with clients or prospective clients outside of the office qualified for the outside sales exemption); *Taylor v. Waddell & Reed, Inc.*, No. 09CV2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) (quoting Opinion Letter from Dept. of Labor, Wage and Hour Division (Jan. 25, 2007), 2007 WL 506575) (recognizing that sales related activity occurring outside the office "one or two hours a day, one or two times a week" satisfies the outside sales exemption); *Silver v. Townstone Fin., Inc.*, No. 14-CV-1938, 2016 WL 4179095, at *3 (N.D. Ill. Aug. 8, 2016).

Rather, the pertinent inquiry is whether the employee performs tasks critical to sales away from the office on a greater than occasional basis. *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2014 WL 2737990, at *7 (S.D. Ohio June 17, 2014) Work performed "incidental to and in conjunction with the employee's own outside sales or solicitations ... shall be regarded as exempt outside work." *Id*. § 541.500(b). *Davidson v. Orange Lake Country Club*, *Inc.*, No. 606CV1674ORL19KRS, 2008 WL 254136, at *6 (M.D. Fla. Jan. 29, 2008), clarified on denial of reconsideration, No. 606CV-1674-ORL-19KRS, 2008 WL 596120 (M.D. Fla. Feb. 29, 2008).

CONFIDENTIAL LGI HOMES 01040

Like LGI's new home consultants, the real estate salespeople in FLSA 2007-2 performed some of their duties in a model home located in a developing community but were required to leave the home multiple times a week, to engage in selling or sales-related activities. *Id.* These activities included: meeting with prospects, showing properties and communities to prospects, touring and demonstrating model homes and home sites. *Id.* A significant portion of the employees' time was spent with customers inside the model home performing sales support activities, such as completing paperwork, creating customer contact cards and promotional materials, calling realtors, learning about the homes, and similar tasks. *Id*.

Based on these facts, the administrator concluded that the real estate salespeople qualified as "outside sales employees" because: (1) their primary duty was selling homes and most of their time was spent on sales-related activities; and (2) they were "customarily and regularly engaged away from the employer's place of business." *Id*. In making the latter conclusion, the administrator defined "the employer's place of business" to include only the model home, as opposed to the entire community. FLSA 2007-2 at 4. Using this definition, a salesperson's time spent showing homes or performing other sales-related activities in the community, but outside of the model home, constitutes time "engaged away from the employer's place of business." *Id*. See also *Wage and Hour Div. Op. Letter 2007-1*, January 25, 2007) ("the lots for sale are not part of the employer's place of business but rather are the products to be sold by the sales associates").

As to the frequency of time spent performing these activities, the administrator explained that:

> The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.

9

FLSA 2007-2 at 3.

Consequently, the administrator concluded, salespeople who left the model home one or two hours a day, once or twice a week, to engage in sales-related activities in the community, were "customarily and regularly engaged away from the employer's place ... of business." *Id*. at 4.

**CONFIDENTIAL**                                                                                                                             **LGI HOMES 01042**